BC

RECEIVED MPV
9/1/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Michael Christiel,<br><br>Plaintiff,<br><br>v.<br><br>City of Chicago, Officer Mark Sharks (#18687), Officer Brandon McCray (#18306), Officer Reginaldo Saucedo (#10368), Marijoy Mendoza, Michael Murphy, Ashley Magda and St. Bernard Hospital,<br><br>Defendants. | Case No. 1:26-CV-02626<br><br>Hon. Franklin U. Valderrama<br><br>Jury Trial Demanded |

FILED RC
9/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 AND ILLINOIS STATE LAW**

Plaintiff, Michael Christiel, for his Complaint against the above-named defendants, states as follows:

## I. Jurisdiction and Venue

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and § 1988. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) & (4) and 28 U.S.C. § 1367 .

2. Venue lies in this District pursuant to 28 U.S.C. § 1391(b), because the events giving rise to these claims occurred within the Northern District of Illinois, County of Cook.

## II. Introduction

3. This is a civil rights action arising from the warrantless search, seizure, and subsequent forcible medical testing and sedation of Plaintiff Michael Christiel.

4. Based solely on an uncorroborated anonymous tip, Chicago Police Officers searched Plaintiff without warning. When he refused to identify himself—exercising his constitutional

rights—officers transported him to a hospital where he was restrained and subjected to invasive, non-consensual acts.

## III. Parties

5. Plaintiff Michael Christiel at all relevant times was physically present in Cook County, Illinois.

6. Defendant Officer Mark Sharks (Star #18687) (Sharks) was at all relevant times a Chicago Police Department (CPD) officer acting under color of state law— he is sued individually.

7. Defendant Officer Brandon McCray (Star #18306) (McCray) was at all relevant times a CPD officer acting under color of state law—he is sued individually.

8. Defendant Reginaldo Saucedo (star #10368) (Saucedo) was at all times relevant a Chicago Police officer who acted under color of state law—he is sued individually.

9. Defendant City of Chicago (City) is a municipal corporation organized under Illinois law that operates the Chicago Police Department.

10. Defendant Marijoy Mendoza (Mendoza) was an employee or agent of St. Bernard Hospital, a healthcare facility in Chicago, Illinois; and acted jointly with CPD officers in the events described herein.

11. Defendant Michael Murphy (Murphy) was an employee or agent of St. Bernard Hospital, a healthcare facility in Chicago, Illinois; and acted jointly with CPD officers in the events described herein.

12. Defendant Ashley Magda (Magda) was an employee or agent of St. Bernard Hospital, a healthcare facility in Chicago, Illinois; and acted jointly with CPD officers in the events described herein.

13. Defendant St. Bernard Hospital (Hospital) is an Illinois corporation operating a hospital within Cook County, Illinois.

## IV. Statement of Facts

14. On or about October 21, 2024, the City of Chicago Office for Emergency Management & Communications received a call from an unidentified caller who stated there was a male with a gun at a gas station.

15. The anonymous caller described a black male wearing a green sweater and blue pants.

16. The unidentified caller gave no information about the man's height, weight, hair color, hair style, or age.

17. The anonymous caller never said that they actually saw a firearm.

18. The caller did not say how they allegedly believed a firearm was present.

19. Defendant Officers Sharks and McCray, responding to the anonymous "black man with a gun" call, arrived at the Citgo—several people also present in the gas station parking lot.

20. No person in the lot spoke to the responding officers or alerted officers to anything.

21. Defendant Officers Sharks and McCray did not speak with the anonymous caller, did not speak with any people in the lot, and received no information that any witness at the gas station had been threatened.

22. Pumping gas with his back turned in the direction of the arriving responding officers, Plaintiff received no visual or audible warning of their presence.

23. Without verifying anyone at the gas station had seen a gun, Defendant Sharks approached Plaintiff silently from behind —Defendant McCray stood-by behind—and without announcing their office, without knowing Plaintiff's name, Defendant Sharks immediately reached around from behind Plaintiff into Plaintiff's front sweater pocket.

24. Startled by Defendant Sharks' warningless physical contact from behind, and having no knowledge of police presence or purpose of contact, Plaintiff reacted instinctively and reflexively by batting the unknown hand away from his pocket and turning around to face the source of contact.

25. Now face-to-face, Defendant Sharks reached again for Plaintiff's pocket, this time to a yielding Plaintiff at the discovery that the unannounced intrusion was caused by uniformed law enforcement.

26. Defendant Sharks then retrieved a pistol concealed in Plaintiff's pocket.

27. No verified information existed that anyone actually saw a gun prior to Defendant Sharks searching Plaintiff.

28. Defendant Sharks never saw a gun in Plaintiff's pocket before touching Plaintiff.

29. Defendant Officer Sharks arrested Plaintiff for not providing his identification.

30. Defendant Officer McCray assisted in the physical restraint of placing Plaintiff in handcuffs and in the squad car.

31. While in custody at the police facility, Plaintiff declined to answer booking questions, provide his name, or submit to fingerprinting or DNA sampling.

32. When Plaintiff declined to answer booking questions, provide his name or submit to fingerprinting and biological sampling, Defendant Officer Sharks stated to Plaintiff, "Oh, we got plans for you."

33. Defendant Officer Sharks communicated the plans to Defendant Officer Saucedo, and in execution of said threat, Defendant Officer Saucedo handcuffed Plaintiff, placed him into a transport vehicle, and took him to St. Bernard Hospital.

34. Upon arrival at the hospital, Defendant Officer Saucedo reported to Defendants Dr. Michael Murphy, Nurse Marijoy Mendoza and Dr. Ashley Magda that Plaintiff had threatened suicide.

35. At no point during his arrest, transport, or detention did Plaintiff state, suggest, or indicate that he intended to harm himself or commit suicide.

36. Defendant Officer Saucedo made this report despite having observed no suicidal statements or behavior by Plaintiff.

37. Defendant Officer Saucedo utilized the false report to procure Plaintiff's involuntary admission and medical clearance.

38. At the hospital, Plaintiff's movement was restricted to a bed by a 4-point restraint by Defendant Officer Saucedo and nurse Marijoy Mendoza.

39. Defendant Mendoza asked Plaintiff for his signature acknowledging his consent to be involuntarily admitted to the hospital—Plaintiff refused to sign or consent.

40. Defendant Mendoza asked Plaintiff for his signature consenting to be administered psychotropic medication—Plaintiff did not sign or consent.

41. Plaintiff did not sign any document or agree to any services provided or offered by Defendant St. Bernard Hospital, through its employees and agents.

42. Plaintiff refused to undergo any tests and demanded Defendants Mendoza, Murphy, other hospital staff and Defendant Saucedo to immediately release him.

43. With Defendant Saucedo's arm across Plaintiff's neck and Defendant Saucedo's body weight pinning Plaintiff down while Plaintiff was already restricted by the 4-point restraint, Defendant Mendoza physically administered chemical sedatives to Plaintiff by intramuscular injection in his neck.

44. Specifically, Defendant Mendoza injected Plaintiff with 2 mg of Lorazepam and 5 mg of Haloperidol.

45. Defendant Murphy had knowledge that Plaintiff possessed the capacity to make healthcare decisions and that he refused the chemical sedatives.

46. Despite this, Mendoza administered the chemicals anyway.

47. The substance in the needle proximately caused Plaintiff to lose consciousness within minutes of the insertion.

48. The forcible sedation of Plaintiff was not performed for any diagnostic or life-saving medical purpose.

49. While sedated and restrained, Defendants Mendoza, Murphy, Magda, and other St. Bernard Hospital staff, acting pursuant to communication with Defendant Officer Saucedo, extracted

DNA and biological samples from Plaintiff without his consent, warrant, or judicial authorization.

50. Plaintiff regained consciousness to find himself still restrained by the 4-point leather restraint and in pain from the use of force to restrain him and pain from the injection site of the needle.

51. Plaintiff also found himself naked, whereas prior to the forced sedation, he was fully clothed.

52. Plaintiff is a devout adherent to the Christian faith and tradition, which teaches that the human body is the Temple of the Holy Spirit (1 Cor. 6:19) and that the sovereign authority over the body rests with God, not the State.

53. Plaintiff's sincerely held religious beliefs dictate the use of natural, "seed-bearing" plants for healing (Genesis 1:29) and prohibit the injection of synthetic, man-made substances (pharmakeia) against his will.

54. On August 7, 2025, the Circuit Court of Cook County (Hon. Laura Ayala Gonzalez) 24CR11773-01 held an evidentiary hearing and subsequently granted Plaintiff's motion to quash arrest and suppress evidence. The Court specifically found that the Defendants lacked probable cause or reasonable suspicion for the initial search and that the evidence obtained was the 'fruit of an unlawful seizure.' This ruling became final when the State dismissed all charges against Plaintiff

55. As a result of defendants' actions, Plaintiff suffered physical pain, emotional distress, was restrained of his liberty as a condition of bail for nearly ten months, suffered loss of employment, humiliation, and invasion of bodily autonomy and privacy and other harm.

## V. Causes of Action

### Count I – Unreasonable Search and Seizure (Fourth Amendment; § 1983) (Against Officer Sharks and McCray)

56. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

57. Defendant Officers Sharks, acting on an unverified, uncorroborated anonymous call about an alleged black man with a gun, under color of state law, approached Plaintiff silently from behind and— in the manner of a thief—reached directly into Plaintiff's clothing.

58. Defendant Sharks possessed no facts demonstrating that Plaintiff had engaged in, was engaging in, or was about to engage in criminal conduct.

59. Defendant Sharks possessed no facts demonstrating that Plaintiff was armed, dangerous, or engaged in criminal behavior.

60. Defendant McCray was present—observed Defendant Sharks initiate an unconstitutional search and seizure of Plaintiff without reasonable articulable suspicion to justify a *Terry* stop, probable cause, consent, or a warrant—possessed a realistic opportunity to intervene, but failed to do so.

61. The actions of Defendants Sharks and McCray violated Plaintiff's clearly established rights under the Fourth Amendment to the United States Constitution.

62. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical contact, humiliation, fear, and a severe deprivation of his liberty.

### Count II – False Arrest and False Imprisonment (Fourth Amendment; § 1983) (Defendants Sharks and McCray)

63. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

64. Defendants Sharks and McCray, acting under color of state law, placed Plaintiff under custodial arrest without a warrant and without probable cause.

65. Defendants arrested Plaintiff solely because Plaintiff declined to answer questions or provide identification during an unlawful investigatory encounter.

66. Plaintiff committed no criminal offense in the presence of Defendants.

67. Defendants had no information that Plaintiff had committed a criminal act prior to their arrival at the gas station where Plaintiff was pumping gas.

68. Defendant McCray actively participated in the unlawful arrest by securing Plaintiff inside a squad car for transport.

69. The actions of Defendants Sharks and McCray violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable seizure and arrest without probable cause.

70. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical restraint, emotional distress, and loss of liberty.

**Count III – Malicious Prosecution, Unlawful Detention (Fourth Amendment; § 1983)**
**(CPD Defendants)**

71. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72. Defendants Sharks, McCray, and Saucedo initiated and maintained criminal proceedings against Plaintiff without probable cause.

73. Defendants based these criminal charges on false police narratives and evidence obtained exclusively through an unconstitutional search and seizure.

74. Defendants acted with malice, knowing that the initial search and subsequent arrest were unsupported by reasonable suspicion or probable cause.

75. As a direct result of these charges, Plaintiff suffered an eight-month deprivation of liberty under restrictive pretrial bail conditions.

76. On August 7, 2025, the Circuit Court of Cook County granted Plaintiff's motion to quash arrest and suppress evidence, finding that Defendants lacked probable cause or reasonable suspicion.

77. Following suppression, the State dismissed all criminal charges, terminating the criminal proceedings entirely in Plaintiff's favor.

78. Defendants' actions violated Plaintiff's Fourth Amendment right to be free from post-arrest detention without probable cause.

**Count IV – Unlawful Retaliation (First Amendment; § 1983) (Defendants Sharks and Saucedo)**

79. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

80. While in custody, Plaintiff engaged in constitutionally protected activity by exercising his First and Fifth Amendment rights to remain silent, refuse custodial questioning, and decline voluntary warrantless biological sampling.

81. In direct response to Plaintiff exercising these protected rights, Defendant Sharks threatened Plaintiff, stating, "Oh, we got plans for you."

82. In execution of that threat, Defendant Saucedo transported Plaintiff to St. Bernard Hospital and communicated a fabricated report to hospital personnel that Plaintiff had threatened suicide.

83. Defendant Saucedo knew this report was false and fabricated it solely to subject Plaintiff to involuntary psychiatric detention, physical restraint, and forced medical procedures.

84. Defendant Saucedo took these adverse actions with the specific intent to retaliate against Plaintiff and deter Plaintiff from exercising protected constitutional rights.

85. As a direct and proximate result of Defendant Sharks' and Saucedo's retaliatory conduct, Plaintiff suffered severe physical trauma, involuntary psychiatric confinement, and emotional distress.

**Count V – Bodily Integrity, Excessive Force, and Arbitrary Seizure**
**(Fourth & Fourteenth Amendments; § 1983)**
**(Defendants Saucedo, Murphy, Mendoza, Magda and St. Bernard Hospital)**

86. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

87. Defendants Saucedo, Murphy, Mendoza, Magda and St. Bernard Hospital, acting jointly under color of state law, subjected Plaintiff to severe physical violence and arbitrary bodily intrusion.

88. Defendants locked Plaintiff in 4-point restraints without medical necessity or emergency.

89. While Plaintiff was already rendered immobile and secured to the hospital bed, Defendant Officer Saucedo applied his arm across Plaintiff's neck and used his full body weight to forcefully pin Plaintiff down, restricting Plaintiff's movement and airway.

90. While Defendant Saucedo actively compressed Plaintiff's neck and body, Defendant Mendoza forcibly inserted a needle directly into Plaintiff's neck, administering 2 mg of Lorazepam and 5 mg of Haloperidol without consent and despite Plaintiff's documented capacity to refuse treatment.

91. Defendant Murphy documented in writing that Plaintiff possessed the legal capacity to make healthcare decisions and that Plaintiff refused psychotropic medications.

92. Dr. Magda was an attending/authorizing physician who reviewed, approved, and authorized the involuntary admission, physical restraint orders, and non-consensual DNA extractions in real time, and had the supervisory authority and duty to intervene to halt the unconstitutional battery.

93. The neck is a dangerous, irregular, and medically improper site for an intramuscular sedative injection.

94. While Plaintiff was sedated and restrained, Defendants stripped Plaintiff of his clothing without his consent.

95. The simultaneous application of neck compression and a non-standard intramuscular neck injection upon an already fully restrained detainee, the forced sedation, and stripping of Plaintiff naked were objectively unreasonable, served no legitimate medical purpose, and constituted excessive force in violation of the Fourth and Fourteenth Amendments

**Count VI – Warrantless Extraction of DNA**
**(Fourth Amendment; § 1983)**
**(Defendants Officer Saucedo, Murphy, Mendoza Magda and St. Bernard Hospital)**

96. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

97. Defendants Saucedo, Murphy, Mendoza, Magda, and St. Bernard Hospital, acting jointly under color of state law, extracted biological fluids and genetic material from Plaintiff’s body.

98. While Plaintiff was chemically sedated and locked in 4-point restraints, Defendants drew blood specimens and performed respiratory swab extractions on Plaintiff.

99. Defendants extracted these bodily fluids without a search warrant, without judicial authorization, without exigent circumstances, and without Plaintiff's consent.

100. Defendants performed these acts in continuance of the initial seizure and prosecution of Plaintiff, without Plaintiff's consent, rather than to treat a life-threatening medical emergency.

101. Defendants' warrantless extraction of Plaintiff's bodily fluids violated Plaintiff's Fourth Amendment right to be secure in his person against unreasonable searches.

**Count VII – First Amendment Free Exercise & Illinois RFRA (775 ILCS 35/15); § 1983**
**(Defendants Saucedo, Murphy, Mendoza, Magda, and St. Bernard Hospital)**

102. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

103. Plaintiff holds sincere Christian religious beliefs that the human body is the Temple of the Holy Spirit (1 Cor. 6:19) and that sovereign authority over the body rests exclusively with God.

104. The tenets of Plaintiff's religious beliefs forbid the non-consensual injection of synthetic, mind-altering pharmaceutical substances into his body.

105. Defendants, acting under color of state law, forcibly injected synthetic chemical sedatives into Plaintiff's neck and extracted bodily fluids against Plaintiff's express will.

106. Defendants' forcible bodily intrusions placed a direct and substantial burden on Plaintiff's exercise of his sincerely held religious beliefs.

107. Defendants acted without a compelling governmental interest and did not use the least restrictive means.

108. Defendants' actions violated Plaintiff's rights under the Free Exercise Clause of the First Amendment and the Illinois Religious Freedom Restoration Act.

**Count VIII – Civil Rights Conspiracy and Joint State Action; § 1983**
**(Defendants Sharks, Saucedo, Murphy, Mendoza, Magda, and St. Bernard Hospital)**

109. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

110. Defendants Sharks and Saucedo reached an agreement and common understanding to deprive Plaintiff of his constitutional rights.

111. In furtherance of this conspiracy, Defendant Saucedo fabricated a false psychiatric emergency, and hospital Defendants Murphy, Mendoza, and Magda accepted the false narrative to justify an involuntary hold.

112. In furtherance of this conspiracy, hospital Defendants applied 4-point restraints, forcibly injected chemical sedatives into Plaintiff's neck while Defendant Saucedo physically pinned Plaintiff to the bed, and extracted bodily fluids without a warrant.

113. By willfully participating in joint activity with police to circumvent Plaintiff's assertion of constitutional rights, the hospital Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

114. As a direct and proximate result of this conspiracy, Plaintiff suffered physical injury, involuntary drugging, and a deprivation of his constitutional rights.

**Count IX – Illinois Civil Rights Act of 2003 (740 ILCS 23/5) (Defendant City of Chicago)**

115. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

116. Defendant City of Chicago, through its police department, utilized a discriminatory policy, pattern, and practice of conducting non-consensual stops, frisks, and seizures of Black individuals based solely on uncorroborated, anonymous 911 calls.

117. Defendant Officers Sharks and McCray treated the generic racial descriptor ("Black male") in an anonymous, uncorroborated 911 dispatch as sufficient justification to bypass all standard investigatory thresholds—conducting an unannounced physical intrusion and reaching into Plaintiff's clothing without observing suspicious conduct, confirming caller reliability, or engaging in consensual dialogue.

118. Defendant Officers' actions and practices subjected Plaintiff to discrimination on the basis of race, in violation of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

119. As a direct and proximate result of Defendant Officers' unlawful practices, Plaintiff suffered physical contact, wrongful arrest, and loss of liberty.

120. Defendant City of Chicago is liable for the acts of the Defendant Officers, under the Act.

**Count X – Indemnification (City of Chicago)**

121. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

122. At all relevant times, Defendant Officers Sharks, McCray, and Saucedo were employees of the Chicago Police Department and acted within the scope of their employment.

123. Under 745 ILCS 10/9-102, Defendant City of Chicago is statutorily obligated to pay any judgment for compensatory damages entered against Defendants Sharks, McCray, and Saucedo resulting from conduct performed within the scope of their employment.

**Count XI - *Respondeat Superior* (State-law claim) (St. Bernard Hospital)**

124. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

125. At all relevant times, Defendants Murphy, Mendoza, and Magda were actual or apparent agents, employees, and staff members of Defendant St. Bernard Hospital and acted within the scope of their agency and employment.

126. Defendant St. Bernard Hospital is vicariously liable for this state-law claim under the doctrine of *respondeat superior* for the unlawful acts, arbitrary seizures, battery, and constitutional violations committed by its staff against Plaintiff by way of this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

127. Defendant St. Bernard Hospital breached its non-delegable duty to protect individuals within its care from unauthorized physical restraint, non-consensual chemical sedation, forced services and warrantless bodily extractions.

128. As a direct and proximate result of the actions of Defendant St. Bernard Hospital and its agents, Plaintiff suffered severe bodily intrusion, physical pain, and trauma.

**VI. Damages**

As a direct and proximate result of the Defendants' objectively unreasonable and willful and wanton conduct, Plaintiff suffered the following injuries:

- **Physical Injury and Pain:** Including the trauma of non-consensual medical tests and injection, the physiological effects of forced sedation, and the physical pinning and restraint of the police defendants.
- **Emotional Distress:** Including fear, anxiety, humiliation, and the psychological trauma of being stripped and sedated while in custody.
- **Economic Loss:** Including loss of employment, lost wages, property, and costs associated with electronic monitoring and legal defense from the quashed arrest.
- **Deprivation of Liberty:** Including the initial detention and the subsequent ten-month restraint of his freedom of movement via electronic monitoring.

## VII. Jury Demand

129. Plaintiff demands trial by jury on all issues so triable.

## VIII. Prayer for Relief

WHEREFORE, Plaintiff Michael Christiel respectfully requests judgment against all defendants, jointly and severally, for:

a. Compensatory damages in an amount to be proven at trial;

b. Punitive damages against the individual defendants;

c. Declaratory relief that the conduct described violated Plaintiff’s constitutional rights;

d. Costs and such other relief as this Court deems just and proper.

Respectfully submitted,

<u>/ s / Michael Christiel</u>

Michael Christiel,
without counsel
Chicago, Illinois

Date: September 1, 2026

## IX. Verification

I, Michael Christiel, the Plaintiff in the above-captioned matter, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Verified on this 1st day of September, 2026.

/ s / Michael Christiel
Michael Christiel,
without counsel
Chicago, Illinois